IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John F. Dunker, ) | |
| ) | Case No. 11 C 50036 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Shelter Mutual Insurance Company, ) | |
| ) | Judge Philip G. Reinhard |
| Defendant. ) | |
| ) | |

## ORDER

For the reasons stated below, defendant's motion [95] for summary judgment is granted. Judgment is granted in favor of defendant and against plaintiff. This case is terminated.

## STATEMENT-OPINION

Plaintiff, John F. Dunker, individually and as trustee of the JSMD Number Three 3 Trust, brought this action against defendant, Shelter Mutual Insurance Company, in state court asserting state law claims of breach of contract (Count I) and violation of Section 155 of the Illinois Insurance Code for vexatious and unreasonable denial of further benefits for damage to real and personal property (Count II). Defendant removed to this court based on diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Illinois, defendant is a Missouri corporation with its principal place of business in Missouri, and the amount in controversy exceeds $75,000. Defendant moves [95] for summary judgment.

Defendant insured plaintiff's residence. Plaintiff claimed a loss for water damage due to leakage from a detached washing machine discharge hose. Defendant paid $27,467.16 on this claim. Plaintiff claims he is entitled to $690,098.31.

Summary judgment is only appropriate if the evidence submitted reveals no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011). On summary judgment the court does not weigh the evidence or determine the credibility of witnesses and all evidentiary conflicts are resolved in favor of the non-movant and all reasonable inferences are drawn in the non-movant's favor. Id. Summary judgment is often called "the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And, by evidence, we mean evidence

on which a reasonable jury could rely." Goodman v. Nat'l Security Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). (citations omitted). Summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact. United States v. 5445 Suffield Terrace, Skokie, Illinois, 607 F.3d 504, 510 (7th Cir. 2010). It is not the court's job to sift through the record and make plaintiff's case for him. Id.

The crux of defendant's motion for summary judgment is that plaintiff has not performed his obligations under the insurance policy, particularly relating to substantiating his losses, showing he made necessary and reasonable temporary repairs to protect the property and providing records of the costs of those repairs, and showing the damaged property to defendant's representative prior to its replacement or repair. Plaintiff's brief does not address defendant's arguments on these points but instead discusses only his position that the water damage was more extensive than defendant asserts. Likewise, plaintiff's LR56.1(b)(3)(B) statement of additional facts only addresses the question of how much water leaked and how that leakage caused water and air moisture damage throughout the house. The statement does not address, or reference evidence, substantiating any loss, establishing plaintiff showed damaged property to defendant's representative prior to its replacement or repair, any repairs performed, or costs of any repairs. So, the evidence as to these matters presented for consideration for summary judgment purposes is that set forth in defendant's LR56.1(a)(3) statement of facts and in plaintiff's responses to those facts, with any conflict in the evidence submitted resolved in plaintiff's favor.

Plaintiff's insurance policy contained the following provisions:

"1. What To Do In Case Of Loss
If a covered loss occurs, the insured must take all of the following actions if applicable to that loss:
*****
(b) Protect the property from further damage. Make necessary and reasonable temporary repairs to protect the property, and keep records of the cost of those repairs.
(c) Send to us, within 60 days after its receipt by you, a proof of loss signed and sworn to by the insured, including:
*****
(4) the total value of the property immediately before and after the loss;
*****
(8) a list (schedule) of personal property damaged or destroyed including all facts known to you regarding:
(i) its quantity,
(ii) its description,
(iii) from whom it was obtained,
(iv) the date it was obtained or purchased,
(v) whether it was purchased new or used,
(vi) the amount of its purchase price,
(vii) the current replacement cost,

2

(viii) the cost to repair it,
(ix) the amount of your loss;
*****
(d) Show the damaged property to us or our representative prior to its replacement or repair, as often as we may reasonably require.
*****
(h) Authorize us, in writing, to obtain any other records that may be relevant to the claim or may reasonably be expected to aid our investigators in determining the facts relevant to the claim."

Under Illinois law, which applies here, the terms of the insurance policy "constitute the scope of the insurer's liability," and "the insured must perform under those terms as a condition precedent to recovery." Ross v. California Casualty Indemnity Exchange, No. 11 C 0513, 2013 WL 2355993, *4 (N.D. Ill. May 29, 2013) (St. Eve, J.). Defendant argues plaintiff failed to comply with the terms of the policy in several key respects relating to substantiating his losses, making necessary and reasonable temporary repairs to protect the property and keeping records of the costs of those repairs, and showing the damaged property to defendant's representative prior to its replacement or repair.

Plaintiff claims the following losses: replacement of cherry hardwood trim ($75,710.21); electrical data ports ($3,914.47); GFIC outlets ($3,783.93); removal and replacement of walls ($80,247.16); flooring supplies, specifically water barriers ($7,434,01); lights ($26,134.91); removal and replacement of first floor trim ($28,298.41); remediation of the HVAC system ($7,695.56); carpet for three bedrooms, a hallway, a great room, and removal, replacement, and sealing of floors ($21,642.44); removal and replacement of living room carpet and pad ($5,859.07); removal and reinstallation of windows, hardware, siding, and sealing ($65,211.50); removal and replacement of doors and hardware ($65,763.51); second replacement of flooring due to mismatched coloring ($85,685.11); furniture and fixtures ($27,850.26); software and computer programs ($22,732.50); and computer systems and electronics ($162,135.26).

According to plaintiff, the computer equipment and electronic equipment was operating in his basement office at the time of the incident. Plaintiff initially claimed this electronic equipment had been purchased from unknown sources but later testified he originally acquired this equipment from someone named Bajelli, partially in exchange for cash and partially in exchange for an airplane plaintiff had previously sold to Bajelli. Plaintiff testified that after the leak on which his claim rests was discovered, Bajelli inspected, dismantled, and tested the computer equipment and found it to be beyond repair. He testified Bajelli returned the disassembled computer equipment to plaintiff and plaintiff subsequently disposed of it on February 27, 2010. Plaintiff never supplied copies of receipts substantiating the purchase of this equipment to defendant.[1] Plaintiff has known Bajelli for thirty or forty years but has no way of

---

[1] Plaintiff says in his response to defendant's statement of facts that he believes "the receipts relating to his electronic purchases were part of the water-damaged documents removed by A-1 [a restoration company hired by defendant]" but he provides no citation to the record for

3

contacting Bajelli. Bajelli has a habit of appearing for a few months then disappearing for three or four years.

Plaintiff hired Keith Otte d/b/a Drywall Concepts to replace the flooring and perform other services at his residence. Otte testified he was contacted by plaintiff to perform services in connection with the water damage. Otte gutted 85-90% of plaintiff's basement, including the removal of the drywall in the walls, the ceiling, insulation and vapor barrier. Plaintiff testified the total cost of Otte's services was $80,247.16 (which was for labor only), a portion of which he paid in cash. Plaintiff could not testify to the exact amount of this claimed payment. Plaintiff testified he would not have withdrawn money from the bank to pay Otte and that he would not have had cash "sitting around" that he would have used to pay Otte. He testified he may have sold a property to pay Otte but he does not know. Otte testified plaintiff paid him $65,000 to $75,000 in cash and that plaintiff still owes him approximately $10,000. Otte can provide no supporting documentation, in either paper or electronic form, to corroborate money received from plaintiff in return for Otte's services. Otte claims he received payment in 2010 for these services but did not declare the $65-$75,000 cash payment as income on his tax return for 2010.

Plaintiff also testified Otte provided or will provide based on estimates – parts and labor costs - totaling approximately $321,422.92 with respect to work on electrical data ports, GFIC outlets, flooring, removal and replacement of first floor trim, cleaning and inspection of the HVAC system, carpet removal and replacement, sealing of floors, removal and reinstallation of windows, hardware, siding, and sealing, and the removal and replacement of doors and hardware. This estimate is not in the record. In his deposition, Otte denied having given plaintiff an estimate for any work related to installing new carpet or windows or for repairing or replacing any flooring other than for the work he performed in the basement. He specifically denied giving plaintiff a quote for approximately $85,000 to do flooring work needed due to this water leak.

Plaintiff also claimed $92,751.63 as the replacement cost of furniture damaged by water and mold. Plaintiff was uncertain as to which of these items he had disposed of, including whether he had disposed of an inlaid table he valued at $28,000. He submitted price lists from retailers to support his $92,751.63 claim (This list is not in the record but defendant's statement of facts says plaintiff submitted such a price list.) He did not submit any receipts for the purchase of any of these items.

A-1 Restoration was hired by defendant to provide restoration services at plaintiff's house after the leak. In conjunction with providing these services, A-1 provided a line item bill. A-1's line item bill did not contain any reference to the removal of cherry hardwood trim. Plaintiff testified A-1 removed cherry hardwood trim from his basement. He did not see it being removed but testified it was there but is now missing. Plaintiff has not provided any receipts verifying his purchase of this trim nor does he recall how he paid for it. Defendant paid plaintiff $8,802.62 for the loss of this trim.

---

this statement so it is not evidence the court will consider. LR56.1(b)(3)(A).

Of the total claimed loss of $690,098.31, $401,670.08 is related to structural damage. Plaintiff's residence is 1799 square feet, plus a full basement. It, along with the land it sits on, were purchased in 2003 for a total of $146,000.

As the above recitation of fact shows, plaintiff has failed to meet his obligations under the terms of the insurance contract. He has not supplied defendant with any meaningful way to verify the existence of many of the items he claims were damaged or to determine the value of damaged items. He failed to show the damaged computer equipment to defendant's representative and disposed of it depriving defendant of any opportunity to verify its existence or its damage. He claims the loss of cherry hardwood trim but provides no basis for defendant to verify plaintiff ever owned it in the first place. He paid Otte $65,000 - $75,000 but has no way to substantiate he paid that amount. He claims Otte has provided him estimates for additional work that needs to be done but the estimates are not in the record and Otte says he did not give plaintiff the estimates plaintiff says he got. Plaintiff claims structural damage in excess of twice the price he paid for the house and land back in 2003 without having supplied defendant any evidence to substantiate this valuation. Plaintiff's failure to comply with the policy terms prevents him from recovering any further from defendant under the policy. See Ross v. California Casualty Indemnity Exchange, No. 11 C 0513, 2013 WL 2355993 (N.D. Ill. May 29, 2013) (St. Eve, J.). Because defendant has no further obligation to pay plaintiff under the policy, the claim for vexatious and unreasonable refusal to pay more also fails.

For the foregoing reasons, defendant's motion [95] for summary judgment is granted. Judgment is granted in favor of defendant and against plaintiff. This case is terminated.

Date: 5/28/2014                ENTER:

                               _____
                               United States District Court Judge

                                              Electronic Notices. (LC)

5